**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

DWM INTERNATIONAL, INC., doing
business as SOCIETY AWARDS, INC.,

     Plaintiff,

                                          Case No. 24 CV _____

v.

CRISTAUX, INC.

     Defendant.

## COMPLAINT

     Plaintiff DWM International, Inc., doing business as Society Awards, complaining of Defendant Cristaux, Inc., says and alleges as follows:

### PARTIES, JURISDICTION and VENUE

     1.     Plaintiff DWM International, Inc. ("Plaintiff"), is a corporation organized and existing under the laws of the State of New York; is authorized to conduct business in North Carolina and maintains its principal place of business in Mecklenburg County, North Carolina.

     2.     Plaintiff does business as "Society Awards."

     3.     Upon information and belief, Defendant Cristaux, Inc., ("Defendant") is a corporation organized and existing under the laws of the State of Illinois with its principal place of business in Schaumburg, Illinois.

     4.     Plaintiff is informed, believes, and therefore alleges that Defendant is subject to personal jurisdiction in the State of Illinois because Defendant was organized under Illinois law and maintains its principal office location in the State of Illinois.

     5.     Venue is proper in the United States District Court for the Northern District (Eastern Division) because Defendant's principal office is in the district.

1

6. This Court has jurisdiction over the subject matter of this lawsuit pursuant to 28 USC §§ 1331 and 1332.

7. The amount in controversy exceeds $75,000.00.

## FACTUAL BACKGROUND

8. Plaintiff is the premier designer and producer of high-end custom award and recognition products, including recognition trophies and awards for the Emmys, Golden Globes, MTV VMAs, MTV Movie Awards, Dancing with the Stars and other generally known events.

9. Plaintiff has been in business for more than 17 years and has developed a reputation for unique designs and premier craftmanship that captures the intrinsic spirit of its customers' award and recognition programs.

10. Defendant purports to design and manufacture trophies and award recognition products.

11. Although technically "competitors," there is little meaningful comparison of the style, design aesthetics, and quality of work between Plaintiff and Defendant.

12. This dramatic disparity between Plaintiff's portfolio of work and Defendant's products has resulted in Defendant actively misrepresenting the nature and quality of its work to third parties and the public generally.

13. Pablo Picasso is famously believed to have said, "good artists copy, great artists steal." If true and such an adage were applied to the circumstances at issue here, Defendant would be a great artist.

14. Notwithstanding Defendant's audacity, the nature and content of its misrepresentations are easily refutable; however, Defendant apparently is unable (or unwilling) to abandon its misleading conduct.

## A HISTORY OF DECEPTION

15.     Plaintiff is – and has always been – rightfully proud of its status as a premier designer and provider of recognition products. Many of its success stories are shared with prospective clients and existing customers on the company's website and social media pages.

16.     Indeed, Plaintiff's work has been the subject of numerous publications and identified in the media for the craftsmanship and style for which Plaintiff is renowned.

17.     Plaintiff's publications about its work and the work of others within the industry have proven ripe territory for Defendant to fabricate stories about Defendant's own experience (or contrived experience).

18.     For instance, consider how Defendant misrepresented its relationship with Pepsi, a world-wide leader in consumer products.

19.     Years ago, another award recognition company designed and manufactured products for Pepsi. This work took place before Defendant was in business; therefore, Defendant could not have contributed to the re-imagined Pepsi recognition products.

20.     Although Defendant had nothing to do with the work performed by another company in the industry, Defendant mislead the world by falsely publishing on its website that it, Defendant, had won Pepsi's business and created an award recognition program for this globally recognized brand.

21.     Incensed by Defendant's willful deceit, Plaintiff called Defendant to task for its misrepresentation about the Pepsi work.

22.     The Pepsi award for which Defendant desperately and duplicitously sought credit was not manufactured by Defendant. A third-party vendor manufactured the Pepsi award at issue. Nevertheless, Defendant wanted the world to believe it had the skill, acumen, vision, and resources

to produce a product specified by Pepsi and was willing to deceive anyone willing to believe Defendant's bogus boasts.

23.    Defendant's intentional misrepresentation of its design and manufacturing experiences are not limited to the Pepsi case study and have continued as a common scheme and practice as recently as this year.

## THE EXHIBITOR AWARD

24.    Consider how Defendant advertises its involvement in an Exhibitor award for the Consumer Electronics Show ("CES") held annually in Las Vegas, Nevada.

25.    According to Defendant, they modified this particular award and boast: "we refined the triangular face to accommodate more room for personalization…[w]ith these small changes, the client's full vision was finally achieved. We modernized their recognition program and ended the past problems." https://www.cristaux.com/case-studies/exhibit-design-awards-exhibitor.

26.    Defendant's boast of achieving a purported client's "vision" is intended to create a sense of specialization, craftsmanship, and artistry (that simply does not exist) to entice customers to entrust their trophy and recognition award programs to Defendant.

27.    However, Defendant's assertion regarding the modified CES Exhibitor award was (and is) patently false.

28.    In 2011, Plaintiff began discussions with CES about redesigning and manufacturing the Exhibitor award.

29.    Within one year, Plaintiff became the sole designer and manufacturer of the Exhibitor Award.

30.    As a result, Plaintiff redesigned the award by flattening one side of the award to allow for easier laser etching and engraving of personalized information for the award recipient.

31.     In 2012, Plaintiff published information on its website about its work on the CES Exhibitor award. In doing so, Plaintiff was marketing its unique design and manufacturing acumen based upon Plaintiff's actual experience. However, as Plaintiff would later learn, its message was misappropriated and turned into Defendant's (bogus) triumph.

32.     Unwilling to let the Pepsi saga repeat itself in the vein of misrepresentations about the Exhibitor award, Plaintiff could remain silent no longer.

33.     On January 30, 2023, Plaintiff's counsel sent notice to Defendant's counsel of Defendant's intentional misrepresentations, false and misleading advertising, and fraud. *A true and accurate copy of the foregoing letter is attached hereto as **Exhibit A**.*

34.     Despite concrete evidence of Defendant's duplicity, Defendant has failed and refused to cease its fraudulent advertising practices.

## <u>FIRST CAUSE OF ACTION</u>
### (Unfair and Deceptive Trade Practices, 815 ILCS 510/2)

35.     The preceding paragraphs are re-alleged and incorporated by reference as if fully set forth herein.

36.     Defendant's representations regarding the design and production of awards conceived and crafted by Plaintiff are untrue, false, likely to create confusion or misunderstanding and, therefore, are "false" and/or "deceptive" and prohibited per 815 ILCS 510/2(a)(1), (2) and (3)

37.     Misleading advertising intended to induce a prospective customer(s) or Plaintiff's existing customer(s) into believing Defendant is responsible for the design and manufacture of products that are, in fact, designed and created by Plaintiff is conduct "in or affecting commerce."

38.     Further, Defendant's on-going publication of false, misleading information is part of a broader scheme of deceptive marketing and advertising intended to harm Plaintiff has harmed Plaintiff.

39.     Plaintiff is entitled to damages as a result of Defendant's conduct (as set forth herein) in an amount to be proven at trial but believed to be at least $100,000.00.

40.     Award Plaintiff its attorney's fees per 815 ILCS 510/3.

**SECOND CAUSE OF ACTION**
**(Violation of the Lanham Act, 15 U.S.C. 1051 et seq.)**

41.     The preceding paragraphs are re-alleged and incorporated by reference as if fully set forth herein.

42.     Defendant has engaged in false of misleading "commercial advertising or promotion of the nature, characteristics, qualities or geographic origin of…another person's goods, services or commercial activities."

43.     Defendant has published/made statements that are (a) commercial claims that literally lack any factual basis and/or (b) ambiguous but convey a false impression; mislead in their context; or are likely to deceive consumers.

44.     Specifically, Defendant made false statements about its own products, which have a tendency to deceive a substantial segment of the likely consumers for such products.

45.     Defendant's false statements, which entered interstate commerce, were material and are likely to influence a purchasing decision.

46.     Plaintiff has been or is likely to be damaged as a result of the false statement by either direct diversion of sales from Plaintiff to Defendant or by loss of Plaintiff's good will.

47.     As such, Plaintiff is entitled to damages in an amount to be proven at trial but believed to be at least $100,000.00.

48.     Additionally, Plaintiff is entitled to recovery its reasonable attorney's fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff DWM International, Inc., prays the Court for the following:

1.     Award Plaintiff damages for Defendant's fraud in an amount to be proven at trial, but believed to be at least $100,000.00;

2.     Award Plaintiff punitive damages;

3.     Award Plaintiff damages for Defendant's unfair and deceptive trade practices in an amount to be proven at trial, but believed to be at least $100,000.00;

4.     Award Plaintiff damages for Defendant's violation of the Lanham Act in an amount to be proven at trial, but believed to be at least $100,000.00

5.     Enjoin defendant from continuing to engage in its deceptive and misleading practices;

6.     Award Plaintiff attorney's fees per 815 ILCS 510/3;

7.     Tax all costs of this action against Defendant;

8.     Any and all other relief the Court deems just and proper; and

9.     A **trial by jury** on all issues so triable per Rule 38 of the Federal Rules of Civil Procedure.

This the 5th day of April, 2024.

/s/ James P. Fieweger_____
James P. Fieweger
MICHAEL BEST & FRIEDRICH, LLP
444 West Lake Street, Suite 3200
Chicago, IL 60606
312.596.5849
jpfieweger@michaelbest.com

Jeffrey A. Long
James deNobriga Long, PLLC

831 E. Morehead Street, Suite 940
Charlotte, NC 28202
704-755-9464 Telephone
jeff@jdlawcarolinas.com

# EXHIBIT A



| | |
|---|---|
| **William P. Bray** * | **Charles J. Bridgmon** * |
| **Jeffrey A. Long** * † | **Brian T. McCully** |
| **Brendan G. Dillashaw** | **Jeneva A. Vazquez** ** |

\* Also licensed in SC
† NC Superior Court Mediator &
  Certified SC Circuit Court Mediator
** Licensed in NC, SC, FL, NM, NJ

January 30, 2023

**VIA US MAIL & EMAIL**
Jami A. Gekas
Foley & Lardner, LLP
321 North Clark Street, Suite 2800
Chicago, Illinois 60654-5313
*jgekas@foley.com*

      **Re:**    **Continued False and Misleading Advertisement by Cristaux;**

Dear Ms. Gekas:

     More than one year ago, I wrote to you about Cristaux's continued false, misleading promotional materials. In particular, I pointed out that Cristaux was taking credit (or attempting to do so) for an award designed and manufactured by Society Awards. In response, you stated that Cristaux "has agreed to make changes to its website to avoid engaging in a protracted dispute with Society Awards." Has that position changed?

     Cristaux – again – is attempting to trade on Society Awards' work. The photograph at https://www.cristaux.com/case-studies/exhibit-design-awards-exhibitor shows a partial image of a CES Exhibitor award. Cristaux represents on its website, "we cut off the front of the cone to create a flat face for personal details…[w]ith this small change, the client's full vision was fully achieved. We modernized their recognition program and ended the past problems." Cristaux had nothing to do with the modified design of the pictured award. The change of which Cristaux brags was made by Society Awards. As proof of this assertion, I am enclosing a copy of an article that explained the modification made and who (Society Awards) was responsible. If Cristaux is willing to publicly misrepresent this fact, imagine what the company's representatives say to customers and prospects in private.

     Candidly, my client grows weary of finding (and pointing out) these types of misrepresentations. The likelihood of preventing "a protracted dispute" wains with every misstatement, falsehood and untruth Cristaux publishes. "A protracted dispute" may only be prevented when Cristaux changes its all too common business practice of deceiving the public about its design experience and customer relationships.

     Cristaux is free to compete with Society Awards on the merits of Cristaux's **own** work – not deceiving customers with bogus claims easily debunked by my client. Indeed, we look forward to Cristaux adapting a more truthful promotional/marketing plan so we are no longer compelled to point out these types of misdeeds. In the alternative, Society Awards is prepared to vindicate its position no matter how "protracted" such an effort may be.

Sincerely,

Jeffrey A. Long

cc: Society Awards (email only)



Exhibit Design Awards    Judges  Examples  "The Point" Trophy    Mailing List / Questions

Winners 2012        Winners 2011        Winners 2010        Winners 2009        Winners 2008



### What's The Point?

In addition to being perhaps the sexiest and most dangerous chunk of aluminum the world has ever known, it's the sharp custom trophy of EXHIBITOR Magazine's Exhibit Design Awards. But make no mistake, as the symbol of international exhibit-design excellence, The Point is no ordinary trophy picked from the pages of an awards catalog. Similar to the HPs and Geek Squads of this world, The Point has a legacy all its own.

EXHIBITOR commissioned this one-of-a-kind trophy design in March 2006. Then, with a small-scale model of The Point in hand, EXHIBITOR staff set out to find a turnkey trophy supplier to create this stunning yet somewhat dangerous prize. We soon abandoned the search, however, as nary a single trophy supplier out of the roughly 25 companies we contacted could fabricate the 10-by-4-inch, angled, aluminum award.

Momentarily deterred but not defeated, we widened our search to include metal-fabrication, aluminum-casting, and molding companies. And that's when things got interesting. After visiting countless firms — and meeting more than our fair share of "interesting" characters and grease-soaked metal-shop dogs — we made a fateful phone call to Richard McGill Sr. of McGill's Propeller & Welding Inc., who not only plotted our course toward success and schooled us on everything we needed to know about metal fabrication (and plenty of stuff we didn't), but who eventually completed the second step in what would turn out to be a four-step fabrication process.

In the first step of the process, the folks at Campbell Grinding in Lewisville, TX, used a lathe to create the rough form. Second, EXHIBITOR staff them picked up the trophies from Campbell and deposited them at McGill's Propeller & Welding, where they were polished to a brilliant shine. Third, staff transported the shiny beauties to Carlisle's Engraving Co., also of Lewisville, where they were engraved using a sandblasting technique. Finally, a staffer

transported them to her home where she meticulously applied cork to the bottom of each one and then took them to a local shipping firm for transport to our winners all around the world.

And so it went... grind, polish, engrave, apply... grind, polish, engrave, apply... from 2006 through 2011. However, near the end of 2011, we received a sales call from Society Awards, a New York-based designer and manufacturer of high-end, custom awards and recognition products. In fact, Society Awards is the proud makers of trophies for the Emmys, Golden Globes, MTV VMAs, MTV Movie Awards, the Dancing With the Stars Mirror Ball Trophy, etc.

The firm had heard of our program and thought it might be able to shorten our four-step process into a single step. After running around Dallas with hundreds of pounds worth of trophies in our car trunks for the last six years, and applying more cork than a winery, our staff — and our company — was ready for a change.



Thus, as of 2012, Society Awards became The Point's sole designer/manufacturer. Immediately, the firm slightly redesigned the trophy, giving it one flat side. Doing so allowed the firm to laser engrave the trophy (as opposed to sandblasting it) and made construction of the form much easier. In addition, it added a small black base, thereby eliminating the need for cork. And thus, we bring you The Point. Born of propeller polishers, metal-shop dogs, and metal-fab firms, EXHIBITOR Magazine's Exhibit Design Awards trophy now rubs shoulders with the Emmys and Golden Globes.